**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE PETITION OF THE REPUBLIC OF TURKEY FOR AN ORDER DIRECTING DISCOVERY FROM HAMIT ÇIÇEK PURSUANT TO 28 U.S.C. § 1782 | Civil Action No. 19-20107 (ES) (SCM)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is petitioner Republic of Turkey's ("Petitioner") renewed petition seeking an order directing discovery from respondent Hamit Çiçek ("Respondent") pursuant to 28 U.S.C. § 1782. (D.E. No. 54 ("Petition")). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); *see also* L. Civ. R. 78.1(b). As set forth below, the Court DENIES the Petition.

## I. Background[1]

The procedural history of this case is set forth in the Court's June 4, 2020 Letter Order, and the Court need not repeat it here. (*See* D.E. No. 53 ("Letter Order")). In the Letter Order, the Court vacated Magistrate Judge Mannion's prior orders in this case out of an abundance of caution; the vacated orders granted Petitioner's November 8, 2019 *ex parte* petition for an order directing discovery from Respondent pursuant to 28 U.S.C. § 1782, (D.E. No. 9 ("Initial Order")), and denied Respondent's motion to vacate the Initial Order (D.E. No. 48). (Letter Order at 3). The Court instructed the parties to submit "a renewed motion and streamlined briefing" to "aid in the

---

[1] The Court pulls the relevant factual background from the parties' submissions for purposes of this motion.

Undersigned's review" of the renewed section 1782 petition.  (*Id.* at 2).  Petitioner filed the Petition on June 9, 2020; Respondent filed his opposition brief on June 15, 2020; and Petitioner filed a reply on June 18, 2020.[2]

Petitioner seeks to obtain documents and information from Respondent to be used in an ongoing international arbitration filed by Cascade Investments NV ("Cascade") against Petitioner under the bilateral investment treaty between the Belgo-Luxembourg Economic Union and the Government of the Republic of Turkey for Promotion and Protection of Mutual Investments ("Treaty"), and in accordance with the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States ("ICSID Convention").  (The "International Arbitration") (D.E. No. 54-3 ("Mov. Br.") at 1).  Cascade claims to be the *bona fide* owner of 99.3% of the shares in a Turkish media corporation, Cihan Medya Dagitim A.S. ("CMD").  (*Id.*). In general, Cascade alleges that Petitioner "breached its Treaty obligations vis-à-vis Cascade by allegedly treating its investment in CMD unfairly and inequitably, failing to protect CMD, and unlawfully expropriating the company."  (*Id.*).  Cascade seeks over $100 million in damages plus interest from Petitioner.  (*Id.* at 5–6).

Petitioner has challenged the jurisdiction of the arbitral tribunal presiding over the International Arbitration (the "ICSID Tribunal").  (*Id.* at 6).  To establish the ICSID Tribunal's jurisdiction, Cascade must show "(1) that it is a good faith 'investor' from the Belgo-Luxembourg Economic Union that made an investment in Turkey that qualifies for protection under the Treaty and the ICSID Convention, and (2) that Cascade made this *bona fide* investment *before* a dispute with [Petitioner] arose, or was foreseeable."  (*Id.* at 1–2 (emphasis in original)).  Petitioner's

---

[2]      Petitioner inadvertently filed an incorrect document in its initial reply (D.E. No. 56) and corrected the error in a supplemental submission (D.E. No. 57).  (*See* D.E. No. 58).  Petitioner requested that the Court remove the mistaken filing, and Respondent has not opposed the request.  (*Id.*).  As such, the Court only considers the corrected submission (D.E. No. 57).

primary challenge to the ICSID Tribunal's jurisdiction is that Cascade acquired its stake in CMD at a time when it was aware of a dispute with Petitioner, and thus specifically acquired the shares to internationalize the dispute, invoking the Treaty's protections and avoiding a dispute in a Turkish Court.  (*Id.* at 5 & 6).  This is where Respondent becomes relevant.  Petitioner explains that, since 2014, it has been investigating several Turkish news outlets, including CMD, for alleged ties to a known terrorist organization Fetullahçı Terör Örgütü ("FETÖ").  (*Id.* at 4; *see also* D.E. No. 54-4 ("Mascarenhas Decl.") ¶ 5).  When the investigation began, Respondent (a Turkish national) owned 23.13% of shares in CMD.  (Mov. Br. at 4; Mascarenhas Decl. ¶ 5; *see also* D.E. No. 55-2 ("Tahsin Decl.") ¶ 9).  In December of 2014, Respondent reportedly purchased an additional 66.67% shareholding stake in CMD from Feza Gazetecilik A.Ş. ("Feza"), another Turkish media company under similar investigation for ties to FETÖ.  (Mov. Br. at 4; Opp. Br. at 4).  In March of 2015, Respondent acquired an additional 10% stake, bringing his total shares in CMD to 99.8%.  (*Id.* at 5).  Shortly thereafter, on May 5, 2015, Respondent sold 89.8% of his shares in CMD to Cascade, and his remaining 10% of shares to Faruk Kardic, then-chairman of CMD's executive board.  (*Id.*).  Cascade eventually acquired an additional 10.13% ownership stake from Kardic, and ultimately owned 99.93% of CMD.  (*Id.*).  Petitioner suggests that this series of events was an attempt to quickly internationalize the brewing dispute between CMD and Petitioner for the purpose of creating arbitral jurisdiction under the Treaty.  (*Id.*).  Thus, Petitioner seeks relevant information from Respondent about his acquisition and sale of shares in CMD through the instant Petition.  (*Id.*).

Respondent opposes the Petition on multiple grounds.  (*See generally* D.E. No. 55-1 ("Opp. Br.")).  Generally speaking, Respondent's objections stem from the fact that he has been criminally charged in Turkey with (i) establishing and running an armed terrorist organization; (ii) laundering

revenues from crime; and (iii) attempting to overthrow the constitutional order.  (Opp. Br. at 4; *see also* Tahsin Decl. ¶¶ 5–6; D.E. No. 55-22 at 3; D.E. No. 55-23 at 4[3]).  In addition, Respondent has been under investigation for other alleged crimes related to his alleged participation with FETÖ and the Gulen Movement.  (Opp. Br. at 32; Tahsin Decl. ¶16(C); *see also* D.E. No. 57-2 ("Kul Decl.") ¶ 5).  Respondent fled Turkey to the United States, sought and was granted indefinite asylum based on political persecution he faced in Turkey, and eventually settled in New Jersey. (*See* D.E. No. 55-13 ("Çiçek Decl.") ¶ 2).  Thus, as Respondent points out, the subject matter of the discovery sought here overlaps with the subject matter of Respondent's criminal charges in Turkey and his reasons for seeking asylum in the United States.  (*See generally* Opp. Br.). Respondent believes that "the Republic seeks discovery under the guise of a civil arbitration claim" so that it may "use any discovery it obtains to aid in its ongoing criminal prosecutions of [Respondent]," and urges the Court to deny the Petition  (*Id.* at 1 & 34).

## II.    Legal Standards

### A.    Subject Matter Jurisdiction

Federal courts have federal question jurisdiction "if the action 'arises under' the 'Constitution, laws, or treaties of the United States.'"  *United Jersey Banks v. Parell*, 783 F.2d 360, 365 (3d Cir. 1986) (quoting 28 U.S.C. § 1331).  Under 28 U.S.C. § 1782, district courts have the power, subject to certain statutory requirements, to order discovery for use in legal proceedings abroad.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 248 (2004).  Thus, this Court "ha[s] jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1782."  *In re O'Keeffe*, 646 F. App'x 263, 265 (3d Cir. 2016).

---

[3]    The Court refers to page numbers in docket entry numbers 55-22 and 55-23 using the page numbers assigned by the Court's Electronic Case Filing System on the upper-righthand corner of the submissions.

B.      28 U.S.C. § 1782

A district court considering an application under section 1782 must first find that the statute's prima facie elements are met, meaning that the application be made:

> (1) by a foreign or international tribunal or any interested person, (2) that it be for use in a proceeding in a foreign or international tribunal, and (3) that the person or entity from whom the discovery is sought be a resident of or be found in the district in which the application is filed.

*In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998) (internal quotation marks omitted).   After satisfying the statutory requirements of section 1782, "the [c]ourt may then consider other factors to determine whether to exercise its discretion to grant the application."   *In re O'Keeffe*, 646 F. App'x at 265–66.   The Supreme Court has identified four discretionary factors relevant to a district court's consideration of a petition under section 1782:

> (1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Id.* at 266 (citing *Intel*, 542 U.S. at 264–65).   In considering the *Intel* factors, a district court retains broad discretion to determine whether judicial assistance is warranted, and "a district court is not required to grant a [section] 1782(a) discovery application simply because it has the authority to do so."   *See Intel*, 542 U.S. at 264–65 (holding that "1782(a) authorizes, but does not require, discovery assistance").   Moreover, the *Intel* factors are non-exhaustive, and a court may exercise its discretion to deny a petition based on other considerations.   *See Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010) (emphasizing that "[j]udicial discretion remains the touchstone" of a

section 1782 request, and that "the Supreme Court in *Intel* provided general guidance for district judges and . . . decided to 'leave it to the courts below to ensure an airing adequate to determine what, if any, assistance is appropriate'") (quoting *Intel*, 542 U.S. at 266); *see also In re Matter of Application of Oxus Gold PLC*, No. 06-82, 2006 WL 2927615, at *7 (D.N.J. Oct. 11, 2006).

While the legal standards guiding a Court's review of a section 1782 petition are straightforward, Respondent raises a number of issues that complicate the Court's analysis. Respondent frames many of his arguments as being separate from any objections under the statute or the *Intel* discretionary factors and argues that a standard analysis under the statute is unnecessary. (*See* Opp. Br. at 3 & 32). Although the Court is ultimately persuaded to deny the Petition, the Court is not willing to sidestep an analysis under section 1782 or *Intel* and finds many of Respondent's arguments in that regard misguided. Nevertheless, for the foregoing reasons, the Petition is denied.

## III.   Discussion

### A.   Statutory Requirements of Section 1782

As a preliminary matter, Respondent challenges none of Petitioner's arguments with respect to the prima facie elements of section 1782.[4] (*See id.* at 32). Instead, Respondent argues that the statute precludes the requested relief because of the formal criminal charges pending against him. (*Id.* at 27–29). For the reasons set forth below, the Court agrees with Petitioner that the prima facie elements are met.

First, Petitioner is among the types of interested persons authorized to apply for judicial

---

[4]     Respondent cites to the Letter Order and suggests that the Court should deny the Petition outright because Petitioner has not provided any admissible evidence as to how the evidence is relevant to criminal charges against Respondent. (*See* Opp. Br. at 21 (citing the Letter Order)). In the Letter Order, the Court directed Petitioner to address the relevance of the pending criminal charges in connection with this Petition, not to file admissible evidence about those charges. (Letter Order at 2). Petitioner has done so, arguing that the pending criminal charges are irrelevant and immaterial to the Petition. (Mov. Br. at 18–22). Thus, the Court declines to deny the Petition on this basis.

assistance under section 1782(a).  The Supreme Court has held that there is "no doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke [section] 1782."  *Intel*, 542 U.S. at 256.  As the respondent in the International Arbitration that underlies this request, Petitioner is undoubtedly an interested person within the meaning of section 1782(a).  *See id.*

Second, the requested discovery is "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  "In *Intel*, the Supreme Court explained that 'Congress introduced the word "tribunal" to ensure that assistance is not confined to proceedings before conventional courts, but extends also to administrative and quasi-judicial proceedings.'"  *In re Mesa Power Grp., LLC*, No. 11-280, 2012 WL 6060941, at *5 (D.N.J. Nov. 20, 2012) (quoting *Intel*, 542 U.S. at 249).  Thus, arbitral tribunals, such as the ICSID Tribunal, qualify as a foreign tribunal under section 1782.  *See In re Oxus Gold PLC*, 2007 WL 1037387, at *5 (explaining what qualifies as a foreign tribunal for purposes of section 1782(a)).  Moreover, Petitioner seeks discovery for use in the International Arbitration, as it is relevant to a jurisdictional issue.  *See id.*, at *6 (affirming a magistrate judge's finding that evidence was for use in a foreign proceeding in part because it was relevant to the proceeding).  Thus, Petitioner also meets the second statutory requirement under section 1782(a).

Finally, the statute's residency requirement—mandating that the petition be brought in a "district court of the district in which a person resides or is found"—is also met because it is undisputed that Respondent resides within this District.  *See* 28 U.S.C. § 1782(a); (Mov. Br. at 11; Çiçek Decl. ¶ 2).

Notwithstanding this straightforward application of the prima facie elements, Respondent argues that judicial assistance cannot be granted pursuant to section 1782 where, as here, there are

pending criminal charges against the Respondent.  (*See* Opp. Br. at 29).  Although the Court ultimately relies, in part, on the pending criminal charges to deny the Petition, the Court does not agree that the statute itself *requires* such a result.

Section 1782 provides that the district court may order a person to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted ***before formal accusation***."  28 U.S.C. § 1782(a) (emphases added).  Respondent clings to the "before formal accusation" language to argue that the "plain statutory language precludes discovery from the individual after that individual is formally charged." (Opp. Br. at 27).  In other words, Respondent claims that because the statute specifically encompasses criminal investigations conducted before formal accusation, it necessarily excludes by omission criminal proceedings after formal accusation.  Respondent provides no authority to support his reading of the statute but suggests that principles of statutory interpretation support his argument.  (*Id.* at 27–29).

Preliminarily, the Court is not certain that the highlighted phrase—"including criminal investigations conducted before formal accusation"—is intended to limit the statute's reach as Respondent suggests.  *See Intel*, 542 U.S. at 259 (discussing the addition of the "before formal accusation language," and stating that "[n]othing suggests that this amendment was an endeavor to rein in, rather than to confirm, by way of example, the broad range of discovery authorized in 1964").  But more importantly, contrary to Respondent's assertions, the issue of whether a petitioner can seek discovery from an individual for use in a criminal investigation after formal accusation is not before this Court.  Rather, the issue before this Court is whether a petitioner can seek discovery from an individual to defend itself in an international arbitration brought by a third-party, when that same individual has been formally accused of a crime.  When the issue is framed

appropriately, the "before formal accusation" language has no bearing on the Court's ability to grant a section 1782 request for discovery to be used in a civil arbitration proceeding, because the discovery is not sought for use in a criminal investigation.

In trying to reframe the issue, Respondent urges the Court to consider the "dual purpose" of the discovery sought here. (Opp. Br. at 32 & 34). Notably, Respondent does not dispute the relevance of the evidence to the International Arbitration but takes issue with the possibility that it may be used for an additional purpose. In support, Respondent claims that Petitioner has "admitted that the discovery also will be provided to prosecutors for determination as to its impact on existing criminal charges against [Respondent] in Turkey—proceedings in which [Respondent] is a participant." (*Id.* at 34). Respondent relies on statements submitted in two declarations indicating that because of certain language contained in the Turkish Criminal Code, "the [Petitioner] is not at liberty to agree to offer any assurances that the evidence provided by [Respondent] will be used exclusively in the [International] Arbitration." (D.E. No. 39-4 ¶ 3; *see* Mascarenhas Decl. ¶ 19). Although these statements ultimately cause the Court concern (*see* Section III(B)(iv)), they do not *necessitate* the conclusion that Petitioner is seeking discovery from Respondent for a "dual purpose." Given the undisputed permissible purpose proffered by Petitioner, (D.E. No. 57 ("Reply Br.") at 2–3; Mov. Br. at 21; Mascarenhas Decl. ¶ 19), the Court turns to the face of the statute to determine whether there is any language to suggest that a petitioner must ensure the district court that the discovery is sought exclusively for the singular purpose stated. There is not. *See* 28 U.S.C. § 1782(a); *see also Glock v. Glock, Inc.*, 797 F.3d 1002, 1006 (11th Cir. 2015) ("[W]e find nothing in the language of [section] 1782 that purports to limit later uses of evidence that have been properly obtained under [section] 1782."). Thus, the possibility that the requested discovery—which is relevant to the International Arbitration—could be used for

another purpose after it is obtained does not serve as a "statutory bar" to the relief sought.  To be clear, the Court does not ignore the existence of the criminal charges and explicitly considers them in its analysis of the *Intel* factors below; however, the Court rejects Respondent's contention that, on its face, the statute bars the requested relief under these unique circumstances.

      **B.**    ***Intel* Factors**

Having found that Petitioner has satisfied all of the statutory requirements under section 1782, the Court now considers the *Intel* factors to "determine whether to exercise its discretion to grant the application." *In re O'Keeffe*, 646 F. App'x at 265–66.

      ***i.*   *Foreign Tribunal's Jurisdictional Grasp***

The first factor—whether the evidence sought is within the foreign tribunal's jurisdictional reach—weighs in Petitioner's favor.  *See Intel*, 542 U.S. at 264.  "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for [section] 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad," given that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Id.*; *see In re O'Keeffe,* 646 F. App'x at 266.

Petitioner argues that the Respondent is not a party to the International Arbitration and is beyond the ICSID Tribunal's jurisdictional reach, and thus, absent section 1782 assistance, the discovery sought is unobtainable.  (Mov. Br. at 12–13).  Respondent does not meaningfully dispute these assertions but argues—without any citations to caselaw—that "in some respects, he is a participant in the foreign proceeding," because of the "dual purpose" of the discovery requests.  (Opp. Br. at 34).  But it is undisputed that Respondent is not a party to the International Arbitration.  (*See id.* at 33).  Any overlap between the issues that may be raised in the International Arbitration

and Respondent's criminal charges do not render Respondent a quasi-party to the International Arbitration. Moreover, Petitioner has already, unsuccessfully, attempted to obtain these documents from Cascade, who objected "on the basis that responsive documents were in [Respondent's] possession, custody, or control, not Cascade's." (Mov. Br. at 13). Consequently, it appears that the evidence sought here is not within "the foreign tribunal's jurisdictional reach," and thus, the "evidence, available in the United States, may be unobtainable absent [section] 1782(a) aid." *Intel*, 542 U.S. at 264; *In re O'Keeffe*, 646 F. App'x at 266; *In re Mesa Power Grp.*, 2012 WL 6060941, at *6.

### ii. Nature of Foreign Tribunal, Character of Proceedings Underway Abroad, and Receptiveness of the Foreign Court to Section 1782 Aid

The relevant inquiry for the second *Intel* factor is "whether the foreign court would consider the evidence revealed from a [section] 1782 order." *Pinchuk v. Chemstar Products LLC*, No. 13-306, 2014 WL 2990416, at *3 (D. Del. June 26, 2014) (citations omitted). In other words, a court considering a section 1782 petition will consider not only the character of the foreign proceedings, but more specifically the "receptivity," if any, exhibited by the foreign tribunal with regard to evidence sought by the petition. *Id.* (citing *Intel*, 542 U.S. at 265). However, as the *Intel* court explained, there is no foreign-discoverability requirement, and a district court may order broader discovery under section 1782 than what may be permitted in the foreign tribunal. *See Intel*, 542 U.S. at 244 & 261. Here, although the ICSID Tribunal was not willing to prejudge any evidence obtained through this Petition, it stated that it is "open in principle (*i.e.*, would not rule out) admitting evidence obtained through the 1782 Proceeding." (*See* Mov. Br. at 14; D.E. No. 54-11 ¶¶ 29 & 32). Accordingly, focusing on the nature of the ICSID Tribunal, the character of the International Arbitration, and the receptivity of the ICSID Tribunal to U.S. federal court

assistance, the second factor weighs in favor of granting the section 1782 request.[5]

### iii.  Circumvention of Foreign Proof-Gathering Policies

The third *Intel* factor directs the Court to consider whether the section 1782 petition is a cloaked attempt to bypass the proof-gathering restrictions of a foreign country or overseas tribunal. *See Intel*, 542 U.S. at 265.  "Circumvention [ ] will not be found merely [because] the requested documents are not obtainable through [the foreign tribunal's] procedures."  *In re Gorsoan Ltd.*, 435 F. Supp. 3d 589, 603 (S.D.N.Y. 2020) (internal quotation marks omitted).  Rather, "a court must also find that the [a]pplicant [is] engaged in a bad faith endeavor to misuse [s]ection 1782." *Id.* (internal quotation marks omitted).

Here, Respondent argues that the "third *Intel* factor also militates against granting the Petition" because "the [Petitioner] has acted to avoid revealing to this Court that it maintains ongoing formal criminal proceedings against [Respondent]."  (*See* Opp. Br. at 37–38).  Respondent also argues that granting the discovery request would "violate[] the Treaty related to evidence gathering for an ongoing criminal case."  (*See id.* at 38).  "The Extradition and Mutual Assistance in Criminal Matters Treaty" ("Extradition Treaty"), discussed by Respondent, is a treaty between the United States and the Republic of Turkey that "governs extradition between the two countries." *United States v. Homaune*, 898 F. Supp. 2d 153, 169 (D.D.C. 2012); (Opp. Br. at 7–8).  "Among other things, th[e] treaty requires each country to extradite defendants accused of 'extraditable offenses . . . .'"  *Homaune*, 898 F. Supp. 2d at 169 (quoting Extradition Treaty, 32 U.S.T. at 3114–

---

[5]    In connection with this factor, Respondent urges the Court to look at the broader picture in Turkey and to view the "nature of the foreign tribunal" as one that purports to function "[a]s an international arbitration panel on the one hand, and the Republic's criminal courts on the other."  (*See* Opp. Br. at 35).  In that regard, Respondent suggests the Court should consider Turkey's "abysmal" attitudes towards individuals such as Respondent.  (*Id.* at 36–37).  The Court ultimately considers some of these arguments, but they do not seem to fit in the analysis of *Intel* factor two, which directs the Court to look at the nature of the ICSID Tribunal, the character of the International Arbitration, and the receptivity of the ICSID Tribunal to U.S. federal court assistance.  *See In re Republic of Ecuador*, No. 10-80225, 2011 WL 736868, at *7–9 (N.D. Cal. Feb. 22, 2011) (analyzing the receptivity of the foreign tribunal, and separately considering broader considerations such as the requesting government's attitudes).

15).  Thus, Respondent argues that by way of its section 1782 request, Petitioner is attempting "to seek aid in its prosecution of those criminally charged under its laws who are in the U.S.," thereby circumventing proof-gathering restrictions under the Extradition Treaty.  (*See* Opp. Br. at 39).  In other words, Respondent seems to argue that a request under the Extradition Treaty, and not discovery assistance pursuant to section 1782, is the only appropriate means by which Petitioner should have sought the evidence possessed by Respondent.  (*See id.*).  Once again, while the Court ultimately considers the criminal charges as relevant to its analysis, Respondent's arguments under the third *Intel* factor are misguided.

To start, Respondent's arguments, again, conflate Respondent's criminal proceedings with the ongoing International Arbitration, and ignore the relevance of the information to the International Arbitration.  With respect to Respondent's general arguments about Petitioner's attempt to hide the criminal proceedings from the Court, the Court is not persuaded that such actions, even if true, amount to the bad faith contemplated by the *Intel* court.  Although Petitioner failed to mention the criminal charges in its initial petition, Petitioner has, since the inception of this case, had a separate and legitimate purpose for seeking to use the documents in the International Arbitration.  In light of that purpose, the Court does not conclude that Petitioner is acting in bad faith.

For similar reasons, the Court does not agree that Petitioner is attempting to circumvent the Extradition Treaty.  The Supreme Court has held that "[b]y the Constitution a treaty is placed on the same footing, and made of like obligation, with an act of legislation.  Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other."  *United States v. Lee Yen Tai*, 185 U.S. 213, 221 (1902).  Thus, section 1782 must be read as consistent with the Extradition Treaty whenever possible.  *See In re Request From Swiss*

*Fed. Dep't of Justice & Police,* 731 F. Supp. 490, 491 (S.D. Fla. 1990) (emphasizing that a court must read statutes, including section 1782, as consistent with a mutual assistance treaty whenever feasible).  Following this principle here, there is no conflict.  The Extradition Treaty outlines the process of extraditing criminals between the two countries and provides the way that Turkey may seek discovery in aid of a *criminal matter.*  *See Homaune*, 898 F. Supp. 2d at 169; (Opp. Br. at 39).  Here, Petitioner requests the evidence for use in the International Arbitration and does not seek discovery in aid of a criminal matter or seek to extradite Respondent by way of this Petition. (*See generally* Mov. Br.; Reply Br.).  In light of this distinction, the Court is not persuaded that the Extradition Treaty provides the *only* way Petitioner can seek evidence from Respondent to be used in the International Arbitration.[6]

In sum, because of the relevance of this evidence to the International Arbitration, the Court does not conclude that Petitioner seeks this information in bad faith or in an attempt to circumvent the Extradition Treaty.  As set forth below, the fact that this evidence could be used in connection with the criminal charges against Respondent concerns the Court, but does not, alone, provide a basis for the Court to conclude that the discovery is requested in bad faith.

### iv.  Intrusive and Burdensome Requests

"Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth [*Intel*] factor aligns with Rules 26 and 45."  *In re Ex Parte Global Energy Horizons Corp.*, 647 F. App'x 83, 85–86 (3d Cir. 2016).  Thus, a district court's evaluation of the fourth *Intel* factor is "virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules."  *Id.* at 86.  And "unduly intrusive or burdensome requests may be rejected or trimmed."

---

[6]     Additionally, the "circumvention" aspect of Respondent's argument is lacking.  Had Petitioner initiated the action abroad in an apparent attempt to create a permissible purpose for discovery, the Court might have been able to infer an attempt to circumvent foreign proof-gathering restrictions.  But here, Petitioner did not initiate the International Arbitration, but rather seeks the evidence as part of its defense.

14

*Intel*, 542 U.S. at 265.  Moreover, the Supreme Court made clear that section "1782(a) expressly shields privileged material: 'A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.'"  *Id.* at 260. Thus, section 1782 allows "a witness to invoke 'any legally applicable privilege' including a privilege bestowed by a foreign country which has requested assistance from American courts." *In re Doe*, 860 F.2d 40, 43 (2d Cir. 1988).  Here, Respondent argues that the fourth *Intel* factor supports denying the Petition because "(1) the document demands seek documents in violation of [Respondent's] right against self-incrimination which relate directly to the pending criminal charges against him; and (2) the deposition subpoena has no limits placed upon it as to what subjects may be covered." (*See* Opp. Br. at 38).[7]

Respondent invokes his right against self-incrimination under the Turkish Constitution. (*See id.* at 29 & 38).  "Federal Rule of Civil Procedure 44.1 controls determinations of foreign law in federal court."  *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999).  "This rule provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so."  *Id.*  Thus, the party invoking foreign law can be said to carry "the burden of adequately proving foreign law to enable the court to apply it in a particular case."  *Id.*  "Where parties fail to satisfy [that] burden, the court will ordinarily apply the forum's law."  *Id.* at 441; *see also In re Tinsel Grp., S.A. for An Order Directing Discovery in Aid of Foreign Proceeding Pursuant to 28 U.S.C. Sec. 1782*, No. 13-2836, 2014 WL 243410, at *2 (S.D. Tex. Jan. 22, 2014) (looking to federal common law to evaluate objections to a section

---

[7]     Both parties address this privilege issue as relevant to the fourth *Intel* factor.  (Mov. Br. at 15–19; Opp. Br. at 38).  Other courts have additionally addressed the question of whether a foreign tribunal would reject evidence obtained with the aid of section 1782 because of an applicable foreign privilege in connection with the second factor, *In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 353 (S.D.N.Y. 2019), but that does not appear to be Petitioner's argument.

1782 petition where the respondents did not "clearly and definitively establish[] that disclosure of documents shared among themselves or their attorneys would violate Dutch privilege law").

Respondent invokes Section 38/5 of the Turkish Constitution with respect to both testimonial and documentary self-incrimination, which provides that "[n]o one shall be compelled to make a statement that would incriminate himself/herself or his/her legal next of kin, or to present such incriminating evidence."  (Opp. Br. at 7 (quoting D.E. No. 55-20, Berutti Decl., Ex. C, Constitution of the Republic of Turkey, at 21)).  But other than plainly stating that the Turkish privilege is broader than the privilege afforded by the Fifth Amendment because "it extends to documents and to testimony which may incriminate him or even his close family members," (*see* Opp. Br. at 29–30), neither Respondent nor his expert explains the substance of the foreign law.  *See Ferrostaal, Inc. v. M/V Sea Phoenix,* 447 F.3d 212, 218 (3d Cir. 2006) (holding that appellant seeking to invoke foreign law failed to carry the burden of demonstrating its application). Specifically, Respondent fails to guide the Court on how the Turkish right against self-incrimination applies to requests for document production and deposition testimony.  (*See* Tahsin Decl. ¶ 15); *see also Nineveh Investments Ltd. V. United States*, No. 16-1068, 2017 WL 6017681, at *2 (E.D.Pa. Dec. 5, 2017) (applying the law of the forum where the plaintiff failed to provide evidence of the *substance* of foreign law); *Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 116 F. Supp. 3d 519, 527 (E.D. Pa. 2015) (finding that an expert declaration that simply mentioned foreign law but did not specifically explain any particular foreign laws or cite any particular cases did not adequately explain the foreign law).  Thus, the Court will "fill any gaps" in Turkish law, as it applies to asserting the right against self-incrimination, with this forum's law.  *See Bel-Ray*, 181 F.3d at 441.

The Fifth Amendment privilege against self-incrimination "can be asserted in any

proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972).  "The privilege reflects a complex of our fundamental values and aspirations," and the Supreme Court "has been zealous to safeguard the values which underlie the privilege." *Id.*  "The privilege afforded not only extends to answers that would in themselves support a [criminal] conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  Moreover, the privilege applies to testimonial communications, which can include oral testimony as well as document production where production of documents is both testimonial and incriminating. *Fisher v. United States*, 425 U.S. 391, 410 ("The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced."); *but see Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 555 (1990) ("[A] person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded."); *see also Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 598 (3d Cir. 1980) (*"*The fifth amendment shields against compelled self-incrimination, not legitimate inquiry, in the truth-seeking process.").  Whether document production would infringe on an individual's right against self-incrimination may "depend on the facts and circumstances of particular cases or classes thereof." *Fisher*, 425 U.S. at 410.

In support of his privilege assertion, Respondent connects the dots between the criminal charges pending against him in Turkey to the sought-after discovery in this Petition.  Specifically, Respondent points out that he is criminally charged with certain actions connecting him to FETÖ, an alleged terrorist organization.  (Opp. Br. at 4).  Respondent also points out that there is a separate

criminal indictment issued against Feza—the Turkish media company from which Respondent purchased certain CMD shares—for its alleged affiliation with FETÖ.  (*Id.*).  Although Respondent is not named in this latter indictment, Respondent suggests that he could be added, and that there may be other criminal investigations underway that he is unaware of.  (*Id.* at 4–6; *see also* Tahsin Decl. ¶ 10).  Moreover, Respondent describes, in detail, the persecution of individuals such as himself who are accused of "having ties to cleric Fetullah Gulen and his movement, accused by the government of masterminding the alleged coup attempt, and designated by the Turkish government as [FETÖ]."  (Opp. Br. at 8–21; *See also* Çiçek Decl. ¶¶ 5–6).  This Court need not evaluate whether Respondent's claims of political persecution are true, because an Immigration Court has already done so; indeed, Respondent has been granted asylum in the United States based on his fear of political persecution in Turkey.  (Çiçek Decl. ¶¶ 2 & 6; *see* D.E. No. 55-14, Çiçek Decl., Ex. A (June 24, 2019 Notice of Asylum Approval)).  In light of these facts, Respondent urges the Court that production of *any* documents responsive to the subpoena would infringe upon Respondent's right against self-incrimination.  (Opp. Br. at 31–32; Tahsin Decl. ¶ 13).  In support, Respondent's expert explains how each of Petitioner's discovery requests "are directly related to the allegations in the criminal investigation" against Respondent.  (*See* Tahsin Decl. ¶ 13; *id.* at 11–12 (describing the categories of documents requested and explaining how each category of documents could be used as evidence for charges against Respondent)).

Under ordinary circumstances, Respondent's blanket assertions of privilege would not persuade the Court to outright deny the Petition.  This is especially true with respect to any privilege asserted in connection with the deposition subpoena.  *National Life Ins.*, 615 F.2d at 598 ("[A] witness cannot relieve himself of the duty to answer questions that *may* be put to him by a

mere blanket invocation of the privilege.") (emphasis added).[8] Moreover, the Court disagrees with Respondent's assertion of privilege to the extent he claims that certain facts contained in documents, which were voluntarily created (*i.e.* not compelled) are privileged.[9] *See Bouknight*, 493 U.S. at 555. Thus, the Court would ordinarily be inclined to have the parties meet and confer to narrow the scope of the subpoenas, narrow the scope of the claimed privilege asserted, and require Respondent to produce any responsive documents, withhold any privileged documents, and produce an accompanying privilege log. Fed. R. Civ. P. 26(b)(5)(A); Fed. R. Civ. P. 45(e)(2)(A); *see also See Weinstein v. Brisman,* No. 18-3910, 2020 WL 1485960, at *7 (D.N.J. Mar. 26, 2020) (directing the parties to meet and confer as to overly burdensome requests and requiring a sufficient privilege log describing any withheld documents); *Endeavor Energy Res., L.P. v. Gatto & Reitz, LLC*, No. 13-0542, 2017 WL 1190499, at *13 (W.D. Pa. Mar. 31, 2017) ("A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality.").

But these are not ordinary circumstances. To start, there are practical problems with requiring the parties to meet and confer. Because the International Arbitration is scheduled for July 27, 2020, Petitioner has explained that for it to be able to use the requested discovery "both the documentary and deposition discovery would need to be completed before [July 20, 2020]." (*See* D.E. No. 60). Despite the Court's best efforts at prompt adjudication of this matter, the time it would take for the parties to meaningfully meet and confer and prepare and produce a

---

[8]     Respondent separately argues that the deposition subpoena is overly burdensome since it is limitless "as to what subjects may be covered." (*See* Opp. Br. at 38). Petitioner filed an amended deposition subpoena with its reply brief, and thus, Respondent did not have the opportunity to address the amended subpoena. In any event, for the reasons discussed herein, the Court exercises its discretion and declines to order any of the sought-after discovery.

[9]     Perhaps Turkish law provides for such a claim of privilege, but Respondent has not adequately demonstrated as much.

comprehensive privilege log may ultimately moot the need for the requested discovery.[10]  Even setting this practical problem aside, the unique circumstances of this case support denial of the Petition, rather than any modification to the sought after discovery.  First, the Court is mindful that when the right against self-incrimination is asserted with respect to document production, it is the very act of production—*i.e.* admitting certain documents exist—that is incriminating.  *See Hoffman*, 341 U.S. at 486 ("[I]f the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee.").  Thus, requiring Respondent to produce a privilege log describing the nature of the documents withheld may eviscerate the purpose of the privilege in the first instance.[11]  But it is not this privilege alone that compels the Court's conclusion.  Rather, it is Respondent's legitimate claim of privilege (albeit raised too broadly) in addition to the criminal charges he faces in Turkey and his indefinite asylum status in the United States that justifies the Court exercising its discretion to deny the Petition.  Specifically, Respondent risks producing evidence that is then used against him in his pending criminal case, or is used to bring additional criminal charges against him, or to initiate extradition proceedings against him, thereby putting his asylum status at risk.  Compounding these concerns are Petitioner's representations "[t]hat Turkish law would require the delivery of any evidence of criminal wrongdoing resulting from the subpoenas to the proper authorities," (*see* Reply Br. at 3), and "the [Petitioner] is not at liberty to agree to offer any assurances that the

---

[10]   This is especially true considering the contentious nature of this case to date, (*see e.g.*, D.E. Nos. 18, 19, 21, 22, 38 & 40), and the likelihood that the parties would require the Court's assistance in resolving disputes that are likely to arise with respect to a privilege log.

[11]   Petitioner argues that the existence of the documents sought is a "foregone conclusion" based on what it already knows.  (Reply Br. at 8).  Although it appears that Petitioner already knows certain facts about the transactions at issue, the Court is not certain that Petitioner already knows exactly what types of documents are in Respondent's custody, or that certain documents indeed exist.

evidence provided by [Respondent] will be used exclusively in the [International] Arbitration," (D.E. No. 39-4 ¶ 3; *see* Mascarenhas Decl. ¶ 19).  Moreover, denying the Petition does not impede on the Petitioner's ability to defend itself on the merits in the International Arbitration because the sought-after discovery is relevant to a jurisdictional defense.  These considerations persuade the Court to deny the Petition.

Finally, the Court has reviewed other cases where courts concerned with subsequent use of evidence obtained through section 1782 proceedings have suggested that a protective order may appropriately limit such use.  *See In re Kegel,* 67 F. Supp. 3d 1054, 1058 (D.N.D. 2014) (explaining that "obviously, a federal court here cannot dictate to a foreign court what evidence it should admit, but that is different from whether a federal court can impose a condition in its [section] 1782(a) order on how the evidence may be used."); *In re Republic of Ecuador*, 2011 WL 736868, at *11 ("In light of the allegations concerning criminal investigations and prosecutions in Ecuador, the Court has asked the parties to meet and confer to prepare an appropriate protective order that will adequately safeguard Respondents from an illicit prosecution based on the documents or testimony they provide pursuant to the subpoena.").  But in light of the nature of the criminal charges pending here, Respondent's asylum status in the United States, and Petitioner's representation "[t]hat Turkish law would require the delivery of any evidence of criminal wrongdoing resulting from the subpoenas to the proper authorities" (*see* Petitioner Reply Br. at 3), the Court is not persuaded that an appropriate protective order is feasible.

Accordingly, because of the substantial overlap between the requested discovery on the one hand and the nature of Respondent's criminal charges, the ongoing criminal investigations related to Feza, and Respondent's asylum status on the other, the Court exercises its discretion to deny the Petition.  *Kulzer*, 390 F. App'x at 92; *In re Bayer AG*, 146 F.3d at 192 (explaining that

the legislative history behind section 1782 makes clear that the "issuance of an appropriate order is left to the discretion of the district court."); *In re Ex Parte Global Energy Horizons*, 647 F. App'x at 87 (recognizing that a district court may modify rather than deny a discovery request under section 1782 but concluding that a district court is "under no obligation to do so.").

**IV.      Conclusion**

For the foregoing reasons, Petitioner's renewed section 1782 Petition is DENIED.  An appropriate Order accompanies this Opinion.

*s/Esther Salas*

**Esther Salas, U.S.D.J.**
